FILED
OCT - 8 2013
U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Bid Protest

ANDRITZ HYDRO CORP.           )
                              )
    Plaintiff,                )   Case No. _____
                              )
    v.                        )
                              )
UNITED STATES OF AMERICA      )
                              )   REDACTED VERSION
    Defendant.                )
_____)

**MEMORANDUM IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Plaintiff ANDRITZ HYDRO Corp. ("Andritz") submits this Memorandum in support of its Motion for Temporary Restraining Order and/or Preliminary Injunction. Andritz seeks to enjoin the defendant United States of America from proceeding with the performance of a contract awarded to National Electric Coil, Inc. ("NEC") under Department of the Interior, Bureau of Reclamation ("Bureau") Solicitation No. R13PS60127 ("RFP"), or in any other way disturbing the status quo in connection with the Yellowtail Powerplant generator rewind project that is the subject of that RFP.

**I.   INTRODUCTION**

This is a Bid Protest arising out of a solicitation for hydrogenerator rewind work at Yellowtail Dam in Bighorn County, Montana. The Bureau awarded a contract to NEC, despite NEC's price being approximately ▮▮▮▮▮ higher than Andritz's price. The Bureau based its decision on a demonstrably incorrect, unfair, and uninformed technical evaluation of Andritz's proposal; conducted inadequate and improper discussions with Andritz in which it did not disclose the significant weaknesses, deficiencies, and adverse past performance information that

it had identified for Andritz's proposal; evaluated Andritz based on undisclosed evaluation criteria applied unequally; and conducted an improper best value tradeoff. Accordingly, the Bureau's award decision is arbitrary, capricious, and not in accordance with law.

As demonstrated in the Complaint, Andritz has a substantial likelihood of success on the merits of its bid protest complaint. Moreover, Andritz satisfies the remaining elements necessary for the Court to grant temporary and preliminary relief, since it can demonstrate irreparable injury if injunctive relief is withheld and minimal effect on the other parties, and because the public interest in the integrity of the procurement process and in economic efficiency favors injunctive relief.

## II. ANDRITZ SATISFIES THE ELEMENTS FOR INJUNCTIVE RELIEF.

### A. STANDARD OF REVIEW

Andritz is entitled to a temporary restraining order and preliminary injunctive relief because it can establish that: (1) it has a substantial likelihood of success on the merits; (2) it will be irreparably injured if injunctive relief is withheld; (3) the effect of the relief sought on other interested parties is minimal; and (4) the public interest is well-served by granting relief. *See, Phoenix Mgmt., Inc. v. United States*, 12-315C, 2012 WL 1949878 (Fed. Cl. May 31, 2012) (citing *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed.Cir.1993)); *ES-KO, Inc. v. United States*, 44 Fed. Cl. 429 (1999); *TRW Environmental Safety Systems, Inc. v. United* States, 16 Cl.Ct. 520 (1989); *Competitive Enterprises Institute, et al. v. United States Dep't of Agriculture*, 954 F.Supp. 265, 269 (D.D.C. 1996) (citations omitted). Injunctive relief is warranted in Government procurement cases "where there has been more than a mere technical violation of the applicable statutes or regulations." *Dairy Maid Dairy, Inc.*, 837 F.Supp. at 1377, *citing Motor Coach*

*Industries, Inc. v. Dole*, 725 F.2d 958, 968 (4th Cir. 1984). "Moreover, it is generally accepted that injunctive relief is appropriate to remedy the improper lifting of a stay pending resolution of a government procurement dispute." *Id.,* at 1381. "On a motion for preliminary injunction, the plaintiff is not required to prove its case by a preponderance of evidence. Rather the plaintiff merely must offer proof of a likelihood of success on the merits." *Mark Dunning Industries, Inc. v. Perry*, 877 F.Supp. 1541, 1544 (M.D.Ala. 1995). Andritz meets its burden of proof in all areas and is entitled to an injunction.

### B. THERE IS A SUBSTANTIAL LIKELIHOOD THAT ANDRITZ WILL BE SUCCESSFUL ON THE MERITS.

Andritz's likelihood of success on the merits of its bid protest complaint is well laid out in the Complaint. In brief, Andritz's protest is based on five major factors.

**First**, the Bureau conducted improper discussions with Andritz by failing to identify significant weaknesses and deficiencies in Andritz's proposal. The Bureau's numerous requests that Andritz modify the technical and price terms of its proposal constitute "discussions," rather than "clarifications" under both the definitions in the RFP and 48 C.F.R. ("FAR") § 15.306(d). Accordingly, the contracting officer was required, "at a minimum" to "indicate to, or discuss with [Andritz] deficiencies, significant weaknesses, and adverse past performance information to which [Andritz] ha[d] not yet had an opportunity to respond." FAR§ 15.306(d)(3); *Cotton & Co., LLP*, B-282808, 99-2 CPD ¶ 48 at 5 (Comp. Gen., Aug. 30, 1999). Specifically, the agency was required to "point out weaknesses that, unless corrected, would prevent [Andritz] from having a reasonable chance for award." *Apptis, Inc.*, B-299457 *et al.*, May 23, 2007, 2008 CPD ¶49 at 13 (citations omitted). "To be meaningful, discussions must include sufficient information

as to the areas in which [the offerors'] proposals are believed to be weak so that the offerors have a reasonable opportunity to address those areas of weakness which could have a competitive impact. An agency's failure to advise an offeror, in some way, of material proposal deficiencies vitiates the meaningfulness of the discussions. Moreover, questions and requests for clarifications which do not address critical deficiencies in an offeror's proposal do not constitute meaningful discussions." *Dynacs Eng'g Co., Inc. v. United States*, 48 Fed. Cl. 124, 131 (Fed. Cl. 2000) (internal quotations and citations omitted). In its Award Notice to Andritz, the Bureau identified for the first time numerous purportedly significant weaknesses in Andritz's proposal – including ▇▇▇ – that had never been previously disclosed to or discussed with Andritz. *See* Complaint ¶¶ 40-52. This was a violation of the terms of the RFP and applicable law and regulation.

**Second**, the Bureau conducted improper discussions by failing to disclose to Andritz adverse past performance information to which Andritz had not previously had the opportunity to respond. *See* Complaint ¶¶ 53-62. This is a violation of FAR 15.306(d)(3), which *specifically* requires that an agency discuss " adverse past performance information to which the offeror has not yet had an opportunity to respond." As identified in the Complaint, the Agency relied on ▇▇▇ Andritz was not aware of, and did not have the opportunity to respond to, any of these pieces of adverse past performance information.

**Third,** the Bureau failed to properly evaluate Andritz in accordance with the stated technical evaluation criteria. The Bureau was required to evaluate Andritz consistently with the evaluation criteria stated in the solicitation. *L-3 Commc'ns Titan Corp.,* B-299317 *et al.* Mar. 29, 2007, 2007 CPD ¶ 66 at 5 (stating that the agency's evaluation of a proposal must be reasonably based, consistent with the stated solicitation criteria, and documented). Instead, with respect to nearly all evaluation factors – and in particular the most important Factor 1 (Major Equipment and Items of Work) – the Bureau incorrectly and improperly applied the evaluation criteria. The Bureau identified as weaknesses items which cannot reasonably be considered weaknesses, such as ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. These were not matters of discretion, but were based on fundamental errors in the Bureau's knowledge and understanding of these components and their properties. The Bureau also unreasonably failed to recognize Andritz's strengths, such as by not assigning any strengths to Andritz's corporate experience despite its extensive experience in the field. Accordingly, Andritz was improperly assigned an overall technical rating of ▬▬▬▬▬ which unfairly prejudiced it in the Bureau's award decision.

**Fourth,** the Bureau evaluated Andritz according to undisclosed criteria which were not applied equally to all offerors. It is a well-established tenet of federal procurement that "An agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation." FAR 15.305(a). *See Sherrick Aerospace*, B-310359.2, Jan. 10, 2008, 2008 CPD ¶17 at 6 (the solicitation "must inform offerors of the basis for proposal evaluation, and the evaluation must be based on the factors set forth in the

solicitation"); *L-3 Commc'ns Titan Corp.*, B-299317 *et al.* Mar. 29, 2007, 2007 CPD ¶ 66 at 5 ("we will examine the agency's evaluation to ensure that it was reasonable and consistent with the solicitation's stated evaluation criteria and procurement statutes and regulations") (citation omitted). Federal procurement law also requires that the contracting agency "treat all offerors equally and evaluate their proposals evenhandedly against the solicitation's requirements and evaluation criteria." *Brican Inc.*, B402602, June 17, 2010, 2010 CPD ¶ 141 at 4 (citations omitted). *See also Ahtna Support & Training Servs., LLC*, B-400947.2, May 15, 2009, 2009 CPD para. 119 at 7 ("while an agency may reasonably emphasize one firm's lack of a particular type of relevant experience, it cannot then ignore another firm's similar lack of experience"). Nevertheless, the Bureau applied undisclosed criteria, such as ▓▓▓▓▓▓ ▓▓▓ an undisclosed requirement that Andritz - and only Andritz - ▓▓▓▓▓▓ ▓▓▓▓▓▓, and an inexplicable requirement that ▓▓▓▓▓▓ ▓▓▓

**Fifth**, the Bureau performed an improper best value analysis by awarding to an offeror whose price was ▓ higher than Andritz's and was unreasonable on its face. Had Andritz and NEC been properly evaluated, Andritz would have been in line for award because its technical rating would have been equal to or higher than NEC's at a significantly lower price.

### C. ANDRITZ WILL BE IRREPARABLY HARMED IF INJUNCTIVE RELIEF IS DENIED.

The denial of a bidder's right to have its bid "fairly and lawfully considered constitutes an irreparable injury . . . . . as does the loss of a major contract." *Dairy Maid Dairy, Inc.*, 837 F.Supp. at 1381 and cases cited therein. "A disappointed bidder that claims illegality in a

procurement alleges an injury beyond its economic loss of the contract. The disappointed bidder may also claim injury to its right to a legally valid procurement process" *National Maritime Union of Am., AFL-CIO v. Commander Military Sealift Command*, 824 F.2d 1228, 1237 (D.C.Cir.1987) (citations omitted). Courts "find irreparable harm and grant injunctive relief to a disappointed bidder more readily where the government has violated statutory or regulatory requirements." *District of Columbia v. Group Insurance Administration*, 633 A.2d 2, 22 fn.18 (1993), *citing O'Donnell Construction Co. v. District of Columbia*,. 963 F.2d 420, 428-29 (U.S.App.D.C 1992) and *Abel Converting, Inc. v. United States*, 679 F.Supp. 1133, 1142 (D.D.C. 1988).

Moreover, Andritz has been able to determine that NEC has been issued a notice to proceed or purchase order in the amount of $726,283. Andritz has attempted to discern whether a stop work order has been issued in view of the Government shutdown, and can find no evidence that such a stop work order has been issued. In fact, Andritz has determined that although the Contracting Officer is on furlough, operational personnel are working at the Yellowtail facility, and that they would be able to provide NEC with access and information necessary for it to continue its work. *See* Affidavit of J. Heaton, Exhibit A.

Andritz is concerned that if performance is allowed to continue during the pendency of Andritz's protest before this Court, this may result in the expenditure of the $726,283 dollars already paid to NEC, and the potential completion of a design by NEC (which would be unusable by Andritz). *See* Affidavit of J. Heaton, Exhibit A. This may create a situation where the Court would be unable to provide Andritz with full and complete remedy, even if Andritz is successful on the merits, if the Court determines that NEC has performed too much work not to be used.

Andritz's proposal was for more than ███████. Andritz cannot fairly be compensated for loss of this contract merely by payment of its bid and proposal costs. Andritz will suffer irreparable harm if it is not granted temporary and preliminary injunctive relief while its protest is being adjudicated on its merits.

### D. THE EFFECT OF AN INJUNCTION ON THE OTHER PARTIES WOULD BE MINIMAL.

The effect of a stay on both NEC and the Bureau would be *de minimis* at most. If Andritz's protest is denied, the only effect on NEC and the Bureau would be a slight delay in the performance of the contract. And, at present, only $726,283 (2% of NEC's $36,314,141 contract value) has been obligated. Based on the terms of the RFP and Andritz's prior experience with this type of contract, this initial payment covers only initial design services. Moreover, Andritz notes that NEC was issued a $726,283 purchase order on September 16, 2013, that the Government lapse in appropriations has been in effect since October 1, 2013, and that this contract contains a limitation of funding clause that expressly states that NEC is not obligated to perform – and the Government is not obligated to pay for any work performed – in excess of the $726,283.

Therefore, while temporary and preliminary injunctive relief is necessary to prevent waste of the funds currently obligated and to preserve the availability of an effective remedy for Andritz, it is highly unlikely that NEC has begun or will begin any massive on-site effort that might result in the inconvenience and expense associated with, for instance, construction mobilization and demobilization. In essence, if the Court issues an injunction, it will only be

asking NEC's designers and engineers to stand down temporarily. This is not the type of harm that would militate against injunctive relief, particularly given the strength of Andritz's protest.

### E. THE PUBLIC INTEREST WILL BE SERVED BY ENJOINING PERFORMANCE.

There is a strong public interest in the maintenance of the integrity of the competitive procurement process. It has been held that even the strong public interest in avoiding disruption of the procurement process must yield to the public interest in requiring agencies to comply with their regulations. *LaBarge Products, Inc. v. West*, 46 F.3d 1547, 1554-55 (Fed.Cir. 1995); *City of Rochester v. United States Environmental*, 496 F.Supp. 751, 765 (D. Minn. 1980). *See also Dairy Maid Dairy, Inc.*, 837 F.Supp. at 1382; *Motor Coach Industries, Inc.*, 725 F.2d at 968.

Andritz has been denied a fair evaluation of its proposal for the work. Public policy requires that Andritz have a fair and equal opportunity to compete for this contract. Government agencies, such as the Bureau, must be held accountable for deviations from the prescribed procedures designed to promote fair and equitable dealings in the contract procurement arena.

Moreover, Andritz understands that on NEC was issued a purchase order or notice to proceed on September 14, 2013, in the amount of $726,283. Based on Andritz's prior experience with this type of contract, this initial payment covers initial design services. Because this money has already been paid to NEC, NEC will keep working – absent injunctive relief – until that money is exhausted. And, given the nature of the hydrogenerator industry, Andritz will not be able to "use" any of the design work performed by NEC. *See* Affidavit of J. Heaton, Exhibit A. This will damage the public interest in that it will lead to the Government double-paying for the same work, wasting money that does not need to be wasted.



Andritz now looks to this Court with the hope that it will promote the interests of the public by enjoining the Bureau from allowing work to continue under an improperly procured contract while adjudicating the merits of Andritz's protest.

## III. CONCLUSION

Andritz requests that this Court grant a temporary restraining order and preliminary injunctive relief in order to allow for sufficient time for its pending protest to be adjudicated so that it may have an equal opportunity to compete for the contract. For the above reasons, a temporary restraining order and preliminary injunctive relief are warranted immediately in this matter.

Respectfully submitted,

October 8, 2013

_____
Laurence Schor
ASMAR, SCHOR & MCKENNA, PLLC
5335 Wisconsin Ave, NW, Suite 400
Washington, DC 20015
(202) 244-4264
(202) 686-3567 (facsimile)
LSchor@asm-law.com
*Counsel of Record for ANDRITZ HYDRO Corp.*

Of Counsel

Susan W. Ebner (SEbner@asm-law.com)
David A. Edelstein (DEdelstein@asm-law.com)
Robert D. Pratt (RPratt@asm-law.com)
ASMAR, SCHOR & MCKENNA, PLLC
5335 Wisconsin Ave, NW, Suite 400
Washington, DC 20015
(202) 244-4264
(202) 686-3567 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that, on this 8th day of October, 2013, I sent a copy of the foregoing via electronic mail and hand delivery to:

> William Rayel
> U.S. Department of Justice
> Commercial Litigation Branch
> 1100 L Street, NW, 8th Floor
> Washington, DC 20530
> Email: nationalcourts.bidprotest@usdoj.gov
> Email: William.rayel@usdoj.gov

_____
Laurence Schor